**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re<br><br>VASCULAR ACCESS CENTERS, L.P.,<br><br>Debtor. | Chapter 11<br><br>Case No. 19-17117 (AMC) |
| STEPHEN V. FALANGA, AS CHAPTER 11 TRUSTEE FOR THE DEBTOR'S ESTATE,<br><br>Plaintiff,<br><br>v.<br><br>QCC INSURANCE COMPANY D/B/A INDEPENDENCE ADMINISTRATORS,<br><br>Defendant. | Adv. Proc. No. 21-_____ (AMC) |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS**
**PURSUANT TO 11 U.S.C. §§ 544, 547, 548, 549 AND 550**
**AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Stephen V. Falanga, in his capacity as chapter 11 trustee ("**Plaintiff**") for the bankruptcy estate of the above-captioned debtor, Vascular Access Centers, L.P. (the "**Debtor**"), by and through his undersigned counsel, files this complaint (the "**Complaint**") against QCC Insurance Company d/b/a Independence Administrators ("**Defendant**") to (i) avoid and recover transfers pursuant to sections 544, 547, 548, 549, and 550 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "**Bankruptcy Code**"), and (ii) disallow any claims held by Defendant. In support of the Complaint, Plaintiff represents and alleges, upon information and belief, as follows:

**NATURE OF ACTION**

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, (i) all preferential transfers of property that

occurred during the ninety (90) day period immediately preceding the commencement of the Debtor's above-captioned bankruptcy case (the "**Chapter 11 Case**") and (ii) all transfers of property that occurred during the period between the Petition Date (defined below) and the Relief Date (defined below), pursuant to sections 544, 547, 548, 549, and 550 of the Bankruptcy Code.

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and 502(j) of the Bankruptcy Code, any claim held by Defendant that has been filed or asserted, or is otherwise reflected in the Debtor's schedules, in this Chapter 11 Case.  Plaintiff does not waive, but hereby expressly reserves, all rights held by Plaintiff and the Debtor to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through 502(j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

1. This court has subject matter jurisdiction over this adversary proceeding (the "**Adversary Proceeding**") pursuant to 28 U.S.C. §§ 157 and 1334(b).  The Adversary Proceeding arises under title 11 of the United States Code and arises in and relates to the Chapter 11 Case.

2. This Adversary Proceeding is a "core" proceeding which may be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

4. The statutory and legal predicates for the relief sought herein are sections 502, 544, 547, 548, 549, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## PROCEDURAL BACKGROUND

5. On November 12, 2019 (the "**Petition Date**"), an involuntary chapter 11 petition was filed against the Debtor. The Debtor consented to the relief [D.I. 3] and an order for relief was entered on November 25, 2019 [D.I. 46] (the "**Relief Date**").

6. On November 22, 2019, William Whitfield Gardner, the Debtor's majority limited partner, filed the *Motion of Majority Limited Partner for Entry of an Order Dismissing the Debtor's Involuntary Chapter 11 Case Pursuant to Section 1112(b) of the Bankruptcy Code, With Prejudice, or, in the Alternative, Appointing a Chapter 11 Trustee Pursuant to Section 1104(a) of the Bankruptcy Code* [D.I. 52].

7. On February 7, 2020, following a hearing on Gardner's motion, the Court issued an opinion and entered an order for the appointment of a chapter 11 trustee [D.I. 235].

8. On February 12, 2020, an order was entered approving Plaintiff's appointment as chapter 11 trustee [D.I. 245].

## PARTIES

9. Plaintiff is the chapter 11 trustee appointed in the Chapter 11 Case. As the chapter 11 trustee for the Debtor's estate, Plaintiff has the authority to investigate the acts, conduct, assets, liabilities, and financial condition of the Debtor and litigate affirmative claims of and object to claims asserted against the Debtor pursuant to 11 U.S.C. §§ 1106 and 704.

10. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that transacted business in the United States with the Debtor. Upon further information and belief, at all relevant times, Defendant's principal place of business was located at 1901 Market Street, Philadelphia, PA 19103.

**FACTUAL BACKGROUND**

11. The Debtor operated its business through limited liability company subsidiaries. The Debtor's subsidiaries operated and managed various outpatient vascular access centers, whereby physician interventionalists perform dialysis access procedures and certain other vascular access procedures on patients with end-stage renal disease and other vascular conditions or diseases. Ultimately, the Debtor's continuing challenges culminated in the filing of an involuntary petition for relief under chapter 11 against the Debtor on November 12, 2019.

12. Prior to the Petition Date, the Debtor maintained business relationships with various business entities, through which the Debtor regularly purchased, sold, received, or delivered goods and services.

13. The Debtor regularly purchased goods from various entities including vendors, creditors, suppliers, and distributors. The Debtor also regularly paid for services used to facilitate its business operations.

14. As set forth in more detail in the Debtor's *Motion for Entry of An Order Authorizing Vascular Access Centers, L.P. to (I) Continue Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms and (III) Maintain Existing Investment Practices* [D.I. 11] (the "**Cash Management Motion**"), prior to the Petition Date, the Debtor consisted of and utilized a cash management system (the "**Cash Management System**"), consisting of one payroll account (the "**Payroll Account**") and two operating accounts (the "**Operating Accounts**," and together with the Payroll Account, the "**Bank Accounts**"). Per the Cash Management Motion, the Payroll and Operating Accounts functioned as follows:

> The Cash Management System consists of one (1) payroll account (ending in 8439) and two (2) operating accounts (ending in 4113 and 6052), each of which is located at Bank of America and controlled by the Debtor (the "Bank Accounts"). Each of the Debtor's

> operating subsidiaries has its own checking account, also with Bank of America, through which the subsidiaries receive their respective government and certain patient receivables. These subsidiary accounts are swept into the Debtor's operating account ending in 6052 and used by the Debtor to make accounts payable transactions for all of the Debtor and its subsidiaries, with the exception of distributions to the subsidiaries' investors. The account ending in 4113 is the Debtor's account that receives all non-patient payments and non-patient funds. The Debtor's 401k funding is paid from this account as an ACH push. Payroll account ending in 8439 is the account into which the Debtor transfers funds that are used by ADP through ACH transfers to process the Debtor's payroll payments.

Cash Management Motion ¶ 5. The Debtor's Bank Accounts are listed on Exhibit B to the Cash Management Motion.

15. The Bank Accounts were part of a carefully constructed cash management system, which was designed to (i) provide an efficient method of collecting, transferring and disbursing funds; (ii) establish procedures and controls necessary to account for funds in an accurate manner; and (iii) facilitate satisfaction of the Debtor's financial obligations.

16. During the ninety (90) day period immediately preceding the Petition Date (the "**Preference Period**") and the fourteen (14) day period between the Petition Date and the Relief Date (the "**Gap Period**"), the Debtor continued to operate its business and, in connection therewith, continued to make disbursements or other transfers of property, whether by checks, cashier checks, wire transfers, ACH transfers, direct deposits, or otherwise to various entities. The Debtor made disbursements and transfers, including those Transfers made to Defendant, though its Cash Management System, as described herein.

17. Upon information and belief, Defendant provided goods or services to the Debtor at varying times prior to the Petition Date. Prior to the Petition Date, the Debtor and Defendant engaged in one or more business transactions pursuant to the terms of agreements entered in connection therewith, which are evidenced by contracts, invoices, communications, and/or other

5

documents (collectively, the "**Agreements**"). The Agreements concerned and related to the goods or services provided by Defendant to the Debtor as described herein.

18. Plaintiff has completed an analysis of all readily available information provided by or otherwise obtained from the Debtor. Upon information and belief, the Debtor made one or more transfers of an interest of the Debtor's property to or for the benefit of Defendant during the Preference Period and during the Gap Period through payments aggregating not less than $416,844.91 (each a "**Transfer**" and, collectively, the "**Transfers**"). Consistent with this review, in October 2021, Plaintiff issued a letter to Defendant demanding return of the total Transfers amount (the "**Demand Letter**"). The details of each Transfer are set forth in **Exhibit A**, as attached hereto and fully incorporated herein by reference.

19. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period or Gap Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtor of an interest of the Debtor's property made to or for the benefit of Defendant or any other transferee. Plaintiff reserves the right to amend this Complaint to include: (i) further information regarding the Transfers, (ii) additional transfers, (iii) modifications of details describing Defendant, including but not limited to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action authorized by the Bankruptcy Code (collectively, the "**Amendments**"). Such Amendments shall be deemed to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

20. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

21. During the Preference Period, the Debtor made Transfers to or for the benefit of Defendant (each a "**Preference Period Transfer**" and, collectively, the "**Preference Period Transfers**") in an aggregate amount not less than $312,594.33.

22. Each Preference Period Transfer was paid from one or more of the Bank Accounts described *supra*, and constituted transfers of an interest in property of the Debtor.

23. Defendant was a creditor of the Debtor at the time each Preference Period Transfer was made by virtue of supplying goods or services, as described herein and in the Agreements, for which the Debtor was obligated to pay in accordance with the Agreements.

24. Each Preference Period Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Preference Period Transfer either reduced or fully satisfied one or more debts then owed by the Debtor to Defendant.

25. Each Preference Period Transfer was made for, or on account of, one or more antecedent debts owed by the Debtor to Defendant before such Preference Period Transfer was made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) held by Defendant immediately prior to each such Preference Period Transfer.

26. Each Preference Period Transfer was made while the Debtor was insolvent. Plaintiff is entitled to the presumption of insolvency for each Preference Period Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

27. Each Preference Period Transfer was made during the Preference Period. *See* **Exhibit A**.

28. As a result of each Preference Period Transfer, Defendant received more than Defendant would have received if: (i) the Debtor's estate was liquidated through proceedings under

7

chapter 7 of the Bankruptcy Code; (ii) the Preference Period Transfers had not been made; or (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code.  As evidenced by the Debtor's schedules of assets and liabilities and statement of financial affairs filed in the underlying bankruptcy case and by the proofs of claim that were received in the in connection therewith, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's bankruptcy estate.

29. Plaintiff has conducted reasonable due diligence in the circumstances of the case and has taken into account Defendant's known or reasonably knowable affirmative defenses under 11 U.S.C. § 547(c).  Likewise, Plaintiff issued the Demand Letter prior to filing this Complaint in order to resolve the substance herein and engage Defendant regarding the Transfers amount.  As of the time of this Complaint, Defendant has failed to remit the amount of the Transfers to Plaintiff.

30. In accordance with the foregoing, each Preference Period Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II
### (Avoidance of Fraudulent Transfers – 11 U.S.C. § 548)

31. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

32. Plaintiff is entitled to avoid the Preference Period Transfers made during the Preference Period pursuant to 11 U.S.C. § 548.

33. The Preference Period Transfers were made within two (2) years prior to the Petition Date.

34. The Preference Period Transfers were made to, or for the benefit of, Defendant.

35. Subject to proof, Plaintiff pleads, in the alternative to Count I, that the Debtor did not receive reasonably equivalent value in exchange for the Preference Period Transfers, because the value of the services or goods the Debtor received was less than the value of the Preference

8

Period Transfers and the Debtor: (i) was insolvent on the dates of the Preference Period Transfers or became insolvent as a result of the Preference Period Transfers; or (ii) was engaged in business or a transaction for which any property remaining with the Debtor was unreasonably small capital at the time of, or as a result of, the Preference Period Transfers; or (iii) intended to incur, or believed that it would incur, debts that would be beyond that Debtor's ability to pay such debts.

### COUNT III
**(Avoidance of Fraudulent Transfers – 11 U.S.C. § 544 and 12 Pa.C.S. §§ 5104 and 5105)**

36. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

37. Plaintiff is entitled to avoid the Preference Period Transfers made during the Preference Period pursuant to 11 U.S.C. § 544 and Pennsylvania Uniform Fraudulent Transfer Act 12 Pa.C.S. §§ 5104 and 5105.

38. As of the Petition Date, the Debtor had numerous general unsecured creditors holding allowable claims who, but for the commencement of the Debtor's Chapter 11 Case, would have standing to bring claims to avoid and recover the Preference Period Transfers under 12 Pa.C.S. §§ 5104 and 5105.

39. The Preference Period Transfers were made within four (4) years prior to the Petition Date.

40. The Preference Period Transfers were made to, or for the benefit of, Defendant.

41. Subject to proof, Plaintiff pleads, in the alternative to Count I, that the Debtor did not receive reasonably equivalent value in exchange for the Preference Period Transfers, because the value of the services or goods the Debtor received was less than the value of the Preference Period Transfers and the Debtor: (i) was insolvent on the dates of the Preference Period Transfers or became insolvent as a result of the Preference Period Transfers; or (ii) was engaged in business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation

to the business or transaction at the time of, or as a result of, the Preference Period Transfers; or

(iii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond that Debtor's ability to pay such debts.

## COUNT IV
### (Recovery of Post-Petition Transfers – 11 U.S.C. § 549)

42. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

43. During the Gap Period, the Debtor made Transfers of property of the Debtor's estate to or for the benefit of Defendant (each a "**Gap Period Transfer**" and, collectively, the "**Gap Period Transfers**") in an aggregate amount not less than $104,250.58. *See* **Exhibit A**.

44. Debtors made the Gap Period Transfers to Defendants on account of obligations that arose before the Petition Date and that cleared after the Petition Date and such Transfers are unauthorized post-petition transfers.

45. No value has been given to the Debtor after the Petition Date in exchange for Gap Period Transfers.

46. In accordance with the foregoing, each Gap Period Transfer is avoidable pursuant to 11 U.S.C. § 549(a).

## COUNT V
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

47. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

48. Plaintiff is entitled to avoid the Transfers pursuant to 11 U.S.C. §§ 544, 547(b), 548(a), and 549.

49. Defendant was the initial transferee of the Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Transfers were made.

50.     Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from Defendant the full amount of each Transfer, as set forth in **Exhibit A**, plus interest accrued thereon from the date of each Transfer to the date Plaintiff recovers payment from Defendant.

### COUNT VI
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

51.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

52.     Defendant is a transferee of one or more transfers avoidable under sections 544, 547, 548, and 549 of the Bankruptcy Code, each of which is recoverable property under section 550 of the Bankruptcy Code.

53.     Defendant has not paid the amount of the Transfers, or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

54.     Pursuant to 11 U.S.C. § 502(d), any Claim, held either by Defendant or by any of its assignees or successors in interest, against the Debtor's chapter 11 estate or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Transfers, plus interest thereon and costs.

55.     Pursuant to 11 U.S.C. § 502(j), any previously allowed Claim, held either by Defendant or by any of its assignees or successors in interest, against the Debtor's chapter 11 estate or Plaintiff must be reconsidered and deemed disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Transfers.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief against Defendant:

A.      On Plaintiff's First, Second, Third, Fourth, and Fifth Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding each Transfer and directing Defendant to remit to Plaintiff the amount of each Transfer, pursuant to 11 U.S.C. §§ 544, 547(b), 548(a), 549, and 550(a),

      plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B.    On Plaintiff's Sixth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Debtor or against Plaintiff until Defendant returns the Transfers to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

C.    Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: November 23, 2021

                                                      BAYARD, P.A.

                                                */s/ Evan T. Miller*
                                                Evan T. Miller, Esq.
                                                Daniel N. Brogan, Esq.
                                                Steven D. Adler, Esq.
                                                600 N. King Street, Suite 400
                                                Wilmington, Delaware 19801
                                                Telephone: (302) 655-5000
                                                Facsimile: (302) 658-6395
                                                Email:  emiller@bayardlaw.com
                                                                 dbrogan@bayardlaw.com
                                                                 sadler@bayardlaw.com

                                                *Counsel to Stephen V. Falanga in his Capacity as Chapter 11 Trustee*